UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
EUGENE SCALIA, Secretary of Labor,                    :
United States Department of Labor,                          **COMPLAINT**

                                                      :

                            Plaintiff,                :   Civil Action No. 5:20-cv-1265 (DNH/TWD)
              v.
                                                      :   20-cv-

BEST COMFORT CARE TRANSPORTATION, INC.,
S&R TRANSPORTATION SERVICES, INC. and                 :
RIYAD ABDEL AZIZ, Individually and as officer,

                                                      :
                            Defendants.
                                                      :

-------------------------------------------------------------

## INTRODUCTION

Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action under section 16(c) and section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("the Act" or "the FLSA"), alleging that Defendants BEST COMFORT CARE TRANSPORTATION, INC., S&R TRANSPORTATION SERVICES, INC. and RIYAD ABDEL AZIZ violated sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act and seeking to enjoin defendants for their violations of the FLSA, including the failure to pay overtime, and the failure to make and keep accurate wage hour records.

The Secretary of Labor brings this action seeking unpaid overtime compensation on behalf of six medical transportation drivers who regularly worked more than 40 hours in a workweek, and sometimes more than 60 hours per week. Rather than paying overtime premiums, defendants perpetrated a multi-faceted scheme designed to evade the FLSA's overtime requirements. The scheme included at least two distinct unlawful pay practices. First, defendants failed to pay some

1

employees *any* compensation for hours worked over 40 in a workweek. Second, defendants paid some employees straight time for hours worked over 40 in a workweek by paying them for the first 40 hours from defendant Best Comfort Care Transportation, Inc. and all hours in excess of 40 from defendant S&R Transportation, Inc., irrespective of where the employees actually worked. Defendants willfully and deliberately failed to comply with their obligations under the Act.

## JURISDICTION AND VENUE

1.      Jurisdiction over this action is properly conferred upon this Court by section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in the United States District Court for the Northern District of New York because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, specifically in Syracuse, New York.

## FACTUAL ALLEGATIONS

*The Parties*

3.      Plaintiff EUGENE SCALIA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages and is the proper plaintiff for this action.

4.      Defendant BEST COMFORT CARE TRANSPORTATION, INC. is a domestic business corporation organized under the laws of the State of New York, having its principal office and place of business at 335 Riegel Street, Syracuse, New York, within the jurisdiction of this Court, where it is engaged in the business of operating a medical transportation company that takes clients to and from medical appointments.

5.      Defendant S&R TRANSPORTATION SERVICES, INC. is domestic business corporation organized under the laws of the State of New York, having its principal office and

place of business at 335 Riegel Street, Syracuse, New York, within the jurisdiction of this Court, where it is engaged in the business of operating a medical transportation company that takes clients to and from medical appointments.

6.    The defendant businesses referenced in paragraphs 4 and 5 above have regulated the employment of all persons employed by them, acted directly and indirectly in the companies' interest in relation to the employees, and thus are employers of the employees within the meaning of Section 3(d) of the Act.

*Riyad Abdel Aziz oversees the Operations of the Corporate Defendants*

7.    Defendant RIYAD ABDEL AZIZ resides in Central Square, New York, within the jurisdiction of this Court.

8.    Defendant Riyad Abdel Aziz is the sole owner of defendant S&R Transportation Services, Inc.

9.    Defendant Riyad Abdel Aziz is the President of defendant S&R Transportation Services, Inc.

10.    Defendant Riyad Abdel Aziz's sister-in-law Tina Paul owns defendant Best Comfort Care Transportation, Inc.

11.    Defendant Riyad Abdel Aziz oversees Best Comfort Care Transportation, Inc.'s operations.

12.    Defendant Best Comfort Care Transportation, Inc. pays defendant Riyad Abdel Aziz to oversee its operations.

13.    Defendant Riyad Abdel Aziz is in active control and management of defendants S&R Transportation Services, Inc. and Best Comfort Care Transportation, Inc. (hereinafter the "Corporate Defendants").

3

14.     Defendant Riyad Abdel Aziz oversees day-to-day operations for the Corporate Defendants.

15.     For example, defendant Riyad Abdel Aziz typically spends at least 40 hours each week at the Corporate Defendants' principal office located at 335 Riegel Street.

16.     Defendant Riyad Abdel Aziz has the authority to make hiring and firing decisions for the Corporate Defendants.

17.     Defendant Riyad Abdel Aziz exercises his authority to make hiring and firing decisions for the Corporate Defendants.

18.     Defendant Riyad Abdel Aziz has authority to supervise employees of the Corporate Defendants.

19.     Defendant Riyad Abdel Aziz exercises his authority to supervise employees of the Corporate Defendants.

20.     Defendant Riyad Abdel Aziz trains employees of the Corporate Defendants.

21.     Defendant Riyad Abdel Aziz has authority to assign and direct the work of employees of the Corporate Defendants.

22.     Defendant Riyad Abdel Aziz exercises his authority to assign and direct the work of employees at the Corporate Defendants.

23.     For example, defendant Riyad Abdel Aziz uses drivers from defendant Best Comfort Care Transportation, Inc. to drive for defendant S&R Transportation, Inc.

24.     Likewise, defendant Riyad Abdel Aziz uses drivers from S&R Transportation, Inc. to drive for defendant Best Comfort Care Transportation, Inc.

25.     Defendant Riyad Abdel Aziz has the authority to set employees' work schedules at the Corporate Defendants.

4

26.     Defendant Riyad Abdel Aziz exercises his authority to set employees' work schedules at the Corporate Defendants.

27.     Defendant Riyad Abdel Aziz has the authority to authorize purchasing and payments at the Corporate Defendants.

28.     Defendant Riyad Abdel Aziz exercises his authority to authorize purchasing and payments at the Corporate Defendants.

29.     Defendant Riyad Abdel Aziz has the authority to determine employee pay at the Corporate Defendants.

30.     Defendant Riyad Abdel Aziz exercises his authority to determine employee pay at defendants the Corporate Defendants.

31.     Accordingly, defendant Riyad Abdel Aziz has regulated the employment of all persons he has employed and has acted directly and indirectly in the interest of the Corporate Defendants in relation to employees. Defendant Riyad Abdel Aziz is thus an employer of the employees within the meaning of section 3(d) of the Act.

*Defendants Are an Enterprise Engaged in Commerce*

32.     The Corporate Defendants' business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the Act.

33.     The Corporate Defendants have common management by defendant Riyad Abdel Aziz, who is 100% owner of defendant S&R Transportation Services, Inc., and is in active management and control of defendant Best Comfort Care Transportation, Inc.  In pursuing this common business purpose, each Corporate Defendant engages in substantially similar, if not identical, business activities.

5

34.     The Corporate Defendants engage in the business of providing medical transportation services, *i.e.*, transporting individuals to and from medical appointments.

35.     Most of the Corporate Defendants' clients are Medicaid recipients.

36.     The Corporate Defendants share employees.

37.     The Corporate Defendants' payroll records show that multiple employees regularly were paid for work by both Corporate Defendants in the same workweek.

38.     For example, defendants' payroll records include defendant Riyad Abdel Aziz as an employee of each of the Corporate Defendants.

39.     As another example, defendants' payroll records show that in June 2019, three drivers were paid for work by each of the Corporate Defendants in the same workweek.

40.     The Corporate Defendants share an office, building and garage at 335 Riegel Street.

41.     Defendant Riyad Abdel Aziz owns the building located at 335 Riegel Street.

42.     Defendant Best Comfort Care Transportation, Inc. pays rent to defendant Riyad Abdel Aziz to use space in the building.

43.     Defendant S&R Transportation Services, Inc. owns the garage located at 335 Riegel Street.

44.     Defendant S&R Transportation Services, Inc. uses its garage located at 335 Riegel Street to service vehicles used by the Corporate Defendants.

45.     Defendant Riyad Abdel Aziz performs repair and maintenance work on vehicles used by the Corporate Defendants in the garage located at 335 Riegel Street.

46.     Telephone numbers for the Corporate Defendants are routed to the same phone in the office located at 335 Riegel Street.

47.     The Corporate Defendants use the same accounting firm.

48.     The Corporate Defendants use the same attorney.

49.     Defendant Riyad Abdel Aziz represented the Corporate Defendants during meetings related to the Wage and Hour Division's investigation.

50.     As set forth herein, the Defendants operate and have operated as a single integrated enterprise within the meaning of section 3(r) of the Act.

51.     The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00 for the relevant time period covered by this complaint, including but not limited to 2017, 2018, and 2019.

52.     The enterprise has employed employees handling, selling, or otherwise working with goods or materials that have been moved in or produced for commerce.  These goods include but are not limited to vans, auto parts and gas. Therefore, the employees are employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

*Defendants' Pay and Recordkeeping Practices*

53.     During the relevant time period, approximately February 7, 2017 to at least July 28, 2019, and possibly to the present (the "Relevant Time Period"), the majority of defendants' employees worked as drivers.

54.     During the Relevant Time Period, defendants' drivers' responsibilities included driving the Corporate Defendants' clients to and from medical appointments.

<u>Defendants' Business Operations</u>

55.     During the Relevant Time Period, defendants' regular business hours were from approximately 7:00 a.m. to 5:00 p.m., Monday through Friday ("Regular Business Hours").

56.     During the Relevant Time Period, the Corporate Defendants' clients also requested transportation to medical appointments before and after Regular Business Hours and on the weekends ("Outside of Regular Business Hours").

57.     For instance, during the Relevant Time Period some of the Corporate Defendants' clients requested transportation requiring defendants' driver to pick the client up before 7:00 a.m., sometimes as early as 5:00 a.m.

58.     As another example, during the Relevant Time Period some of the Corporate Defendants' clients requested transportation requiring defendants' drivers to pick up or drop off the client up after 5:00 p.m., sometimes as late as 9:00 p.m.

59.     Likewise, during the Relevant Time Period, some of the Corporate Defendants' clients requested transportation that required defendants' drivers to pick them up and drop them off on Saturdays and Sundays.

60.     During the Relevant Time Period, some of defendants' drivers regularly transported the Corporate Defendants' clients to and/from medical appointments both during Regular Business Hours and Outside of Regular Business Hours.

61.     Each of defendants' drivers kept a daily driver log recording, *inter alia*, the time of each client pick-up and the time of each client drop-off.

62.     Throughout the work day, defendants required their drivers to be available whenever defendants directed them to drop off or pick up a client from their medical appointment.

63.     If a driver needed to attend to a personal appointment, such as a doctor's

appointment, during the work day, he was required to obtain approval from defendants in advance.

64.     The time between transporting clients to and from appointments was unpredictable and inconsistent.

Overtime Hours Worked

65.     During the Relevant Time Period, many of defendants' drivers regularly worked more than 40 hours per week.

66.     During the Relevant Time Period, several of defendants' drivers regularly worked between 50 and 60 hours per week.

67.     During the Relevant Time Period, some of defendants' drivers worked more than 60 hours per week.

68.     As one example, during the Relevant Time Period, defendants' payroll records show that several drivers were assigned to pick up clients of both Corporate Defendants in a single workweek and in such workweeks, the drivers' combined hours at both companies regularly totaled over 40 hours.

69.     However, defendants did not keep accurate time records of the actual hours these employees worked for each Corporate Defendant and instead, paid these employees' first 40 hours of work from defendant Best Comfort Care Transportation, Inc. and any excess hours from defendant S&R Transportation Services, Inc., regardless of actual hours spent working for each company.

70.     For instance, defendants' payroll records for each week of June 2019 show one driver was paid for 40 hours by defendant Best Comfort Care Transportation, Inc.

71.     Defendants' payroll records for each week of June 2019 show this driver was also paid for between seven and 33 hours a week by defendant S&R Transportation Services, Inc., for a total of between 47 and 73 hours per week for both Corporate Defendants in June 2019.

72.     During the Relevant Time Period, defendants' daily driver logs show that drivers who were assigned to transport clients of just one of the Corporate Defendants also regularly worked hours over 40 in a single workweek.

<u>Failure to Pay Overtime Wages</u>

73.     Typically, during the Relevant Time Period, the Corporate Defendants paid their employees by check each week.

74.     On some occasions during the Relevant Time Period, some drivers also received cash.

75.     Defendants' records show that during the Relevant Time Period, defendants engaged in various pay practices to avoid paying their drivers overtime at time and one-half the employee's regular rate: (a) paying only the regular hourly rate for overtime hours and not the half-time premium; and (b) not paying *any* wages for overtime hours worked.

*Defendants' Records Show All Overtime Hours Paid at Employees' Regular Rate of Pay*

76.     During the Relevant Time Period, defendants' payroll records show that when a driver transported clients for both of the Corporate Defendants in a single workweek and the driver's combined hours totaled over 40, defendants issued two separate checks and paid all such hours at the employee's regular rate of pay.

77.     For example, defendants' payroll records show that a driver was paid at his regular hourly rate of pay for all hours described in paragraphs 71 and 72, including hours over 40.

*Defendants' Records Show Non-Payment of Overtime Hours*

78.    Defendants' daily driver logs often show that their drivers worked hours in excess of 40 in a single workweek but defendants' payroll records consistently show that they only paid such drivers for 40 hours each week.

79.    As a result of defendants' pay practices, during the Relevant Time Period, defendants failed to pay their employees proper overtime when employees worked in excess of 40 hours per week as prescribed by section 7 of the FLSA.

<u>Failure to Keep Records</u>

80.    During the Relevant Time Period, defendants did not make, keep, and preserve complete and accurate records of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

81.    More specifically, during the Relevant Time Period, defendants failed to keep complete and accurate records of, *inter alia*, drivers' daily and weekly hours of work, and records of their regular or overtime rates of pay.

82.    Defendants also failed to preserve payroll records for at least three years.

*Defendants' Practices Have Been Willful*

83.    During the Relevant Time Period, defendants were aware of their obligation to pay each of their employees time and one-half of their regular hourly rate for all hours worked over 40 in a single workweek.

84.    As described herein, defendants' actions have been willful. For example, defendants attempted to simulate compliance with the Act and conceal their failure to pay overtime compensation at time and one-half by assigning some employees to work more than 40 hours in a single workweek but a) intentionally splitting those hours between clients of the two Corporate

Defendants and b) segregating the total hours worked between separate payroll accounts.

85. Even when defendants assigned employees to drive clients of just one Corporate Defendants during the workweek, defendants attempted to simulate compliance with the Act and conceal their failure to pay overtime compensation to those employees by not including hours over 40 worked in a single workweek on payroll records.

## TOLLING AGREEMENT

86. On or about August 31, 2020, the Secretary and Defendants knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("tolling agreement").

87. The tolling agreement tolls the applicable statute of limitations from February 7, 2020 through September 14, 2020.

88. Accordingly, the Act's statute of limitations, as applied to all Defendants, shall be tolled from February 7, 2020 until and including September 14, 2020.

## FIRST CAUSE OF ACTION

**Violation of Sections 7(a) and 15(a)(2) of the FLSA, Failure to Pay Overtime**

89. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 88 of the complaint.

90. Defendants in many workweeks have willfully violated the provisions of sections 7 and 15(a)(2) of the Act by employing their drivers in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than those prescribed in section 7 of the Act without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

91. Therefore, defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under section 16(c) of the Act or, in the event liquidated damages

are not awarded, unpaid overtime compensation and prejudgment interest on said unpaid overtime compensation under section 17 of the Act.

## SECOND CAUSE OF ACTION

### Violation of Sections 11(c) and 15(a)(5) of the FLSA

92.     The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 88 of the complaint.

93.     Defendants have willfully violated the provisions of sections 11(c) and 15(a)(5) of the Act, in that these defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the Regulations issued and found at 29 C.F.R. Part 516.

94.     Specifically, defendants failed to make and maintain adequate and accurate records of, *inter alia*, their employees' actual daily and weekly hours of work.

95.     Defendants also failed to preserve records for at least three years.

**WHEREFORE**, cause having been shown, Plaintiff respectfully prays for judgment against defendants providing the following relief:

1.     An injunction issued pursuant to section 17 of the Act permanently restraining defendants, their officers, agents, servants, employees, and those persons in active concert or participation with defendants, from violating the provisions of sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act; and

2.     An order pursuant to section 16(c) of the Act finding defendants liable for unpaid overtime compensation found due defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages; or

3.      In the event liquidated damages are not awarded, for an injunction issued pursuant to section 17 of the Act restraining defendants, their officers, agents, employees, and those persons in active concert or participation with defendants, from withholding the amount of unpaid overtime compensation found due defendants' employees and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4.      An order compelling defendants to reimburse the Secretary for the costs of this action; and

5.      An order granting such other relief as the Court may deem necessary or appropriate.

DATED:       October 14, 2020
             Brooklyn, New York

KATE S. O'SCANNLAIN
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

s/ Allison L. Bowles
ALLISON L. BOWLES
Senior Trial Attorney

U.S. Department of Labor,
*Attorneys for Plaintiff Secretary of Labor*

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3658
(646) 264-3660 (fax)
bowles.allison@dol.gov
NY-SOL-ECF@dol.gov
Secretary of Labor, Plaintiff

## **EXHIBIT A**

1.              Thomas Scovile

2.              Muhammed Shehadeh

3.              Ahmed Shqair

4.              Lonny Spivey

5.              Waleed Waleed

6.              Michael Williams